IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA formerly known as
TRAVELERS INDEMNITY COMPANY OF
ILLINOIS,

07cv0754
**ELECTRONICALLY FILED**

       Plaintiff(s),

  v.

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

       Defendant(s).

**MEMORANDUM OPINION**

**March 10, 2008**

    **I.**    **Introduction**

This is an insurance coverage dispute. The insured, Sheila Biblis ("Biblis"), and fellow employee Adella Johnson ("Johnson"), were seriously injured by an underinsured motorist while Biblis was driving a rental vehicle within the course of her employment. Biblis was insured by Travelers Property Casualty Company of America ("Travelers"), on a business policy maintained by her employer, Whispering Oaks, and she was also insured by State Automobile Mutual Insurance Company ("State Auto") on a personal automobile policy. Biblis brought a claim for underinsured motorist coverage and because State Auto chose not to participate in the settlement, Travelers paid Biblis $425,000 for her injuries, and $535,000 for the injuries to her passenger.

Travelers then brought a two-count complaint before this Court seeking a declaration that State Auto and Travelers are in the same priority of underinsured motorist coverage and alleging a claim for pro rata contribution against State Auto. Before this Court are the parties cross-

motions for summary judgment.

After careful consideration of the cross motions for summary judgment, the responses thereto, the supporting briefs, and the materials submitted in support of summary judgment, the Court finds that the order of priority is equal as a matter of law. Therefore, the Court will grant the motion for summary judgment brought by Travelers (doc. no. 24), and will deny the motion for summary judgment brought by State Auto (doc. no. 20).

II.     **Summary Judgment Standards**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-

moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III. Material Facts

There are no genuine issues of material fact, only issues about the appropriate inferences and legal consequences of the undisputed material facts, and unless noted, the following facts are

not disputed.

On February 22, 2001, Biblis was involved in an automobile accident while driving a rental vehicle during the course and scope of her employment with Whispering Oaks. Fellow employee Johnson was a passenger in the rental vehicle. Both Biblis and Johnson sustained serious injuries when the rental vehicle was struck by a vehicle driven by Ronald Mahonovich. Mahovich carried automobile liability insurance with Nationwide Insurance Company; however, his bodily injury limit was $25,000 per person. Those limits were paid to Biblis and Johnson but this sum was insufficient to compensate them for their injuries.

Whispering Oaks was an insured under a policy issued by Travelers to Holiday Retirement Corp. with effective dates of 12/1/2000-12/1/2001 and underinsured motorists (UIM) limits of $1,000,000. Travelers paid Johnson $535,000 in UIM benefits for her injuries, and paid Biblis $425,000 in UIM benefits for her injuries, based upon a fair and reasonable estimate of their damages.

Biblis was an insured under a personal automobile policy issued to her by Meridian Mutual Ins. Co., now State Auto, which was also in effect at the time of the accident. The State Auto policy, which listed three vehicles on its declaration page, and only two of which had underinsured coverage, had coverage limits of $250,000. However, State Auto does not have a valid waiver of stacking of underinsured motorist limits from Biblis.

Prior to the payment of UIM benefits to Biblis, Travelers invited State Auto, as successor to Meridian Mutual Ins. Co., to participate in the settlement on a pro-rata basis, based upon the fact that both policies were of the second priority of recovery. State Auto declined to participate because it disagreed that the two policies were both of the second priority of recovery.

4

After Travelers made its payment of UIM benefits to Biblis, State Auto paid Biblis $40,000 in UIM benefits. The rental car company did not provide UIM coverage for the rental vehicle.

**The Travelers Policy**

The starting point of this or any insurance coverage dispute is, of course, the insurance policy or policies.

The Travelers Policy contains Uninsured/Underinsured Motorists Coverage with limits of $1,000,000, governed by a Pennsylvania Underinsured Motorists Coverage - Nonstacked Endorsement. The Covered Auto Symbol for Uninsured and Underinsured Motorists Coverage is "2." The policy provides that Covered Auto Symbol 2 equals "OWNED 'AUTOS' ONLY," meaning "only those 'autos' you own (and for Liability Coverage any 'trailers' you don't own while attached to power units you own). This includes those 'autos' you acquire ownership of after the policy begins."

In other words, the coverage and limits of insurance section clearly provides that uninsured and underinsured motorists coverage is limited to owned autos only. Here, there is no dispute that the insured did not own the vehicle in question.

The Pennsylvania Underinsured Motorists Coverage - Nonstacked Endorsement of the Travelers Policy states:

    A.    Coverage

        1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from

5

the ownership, maintenance or use of an "underinsured motor vehicle."

Exhibit 1, at p. 1 of 4.

The Pennsylvania Underinsured Motorists Coverage - Nonstacked Endorsement of the Travelers Policy defines who is an insured for UIM coverage:

> B. Who Is An Insured
>
> 1. You
> 2. If you are an individual, any "family member"
> 3. Anyone else "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle." The covered "motor vehicle" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
> 4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

Exhibit 1, at p. 1 of 4.

The definition of Who Is An Insured was modified by the Drive Other Car Coverage - Broadened Coverage for Name Individuals Endorsement, which applies to Whispering Oaks' employees, as follows:

> C. CHANGES IN AUTO MEDICAL PAYMENT AND UNINSURED AND UNDERINSURED MOTORISTS COVERAGES
>
> The following is added to WHO IS AN INSURED:
>
> Any individual names in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by an "auto" you don't own except:
> Any "auto" owned by that individual or by any "family member."

Exhibit 1, Drive Other Car Coverage - Broadened Coverage for Named Individuals Endorsement at p.2 of 2.

The Pennsylvania Underinsured Motorists Coverage - Nonstacked Endorsement contains

an Other Insurance provision that states:

    3.     Other Insurance in the Business Auto and Garage Coverage Forms is replaced by the following:

          a.     If there is other applicable similar insurance available under more than one Coverage Form or policy, the following priorities of recovery apply:

              First          The Underinsured Motorists Coverage applicable to the Vehicle the "insured" was "occupying" at the time of the "accident."

              Second     The Coverage Form or Policy affording underinsured Motorist Coverage to the "insured" as a named insured or family member.

          b.     Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.

          \* \* \*

          d.     If two or more Coverage Forms or policies have equal priority:

              (1)    The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;

              (2)    The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits paid and the costs of processing the claim; and

              (3)    If we are the insurer against whom the claim is first made, we will pay, subject to the limit of insurance for Underinsured Motorists Coverage shown in the Declarations, after all contributing insurers agree as to:

                  (a) Whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle;" and

                  (b) The amount of damages.

Exhibit 1, at pp. 2-3 of 4 (emphasis added).

**The State Auto Policy**

The State Auto Policy's declaration page lists three vehicle under the designation, "VEHICLES COVERED." Naturally, the rented car that was involved in this accident is not listed under the "VEHICLES COVERED" section of the Policy. Thus, the State Auto Policy contains UIM coverage, not on the vehicle in question, but on the insured. The Policy does not contain a valid waiver of stacking and the policy limits is $250,000 for two vehicles (total is $500,000). Joint Concise Statement of Facts at ¶ 9. In the definitions section of the State Auto Policy, "your covered auto" means, inter alia, "Any vehicle shown in the Declarations."

The State Auto Policy's UIM Coverage endorsement provides:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
>
> 1. Sustained by an "insured"; and
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise of the ownership, maintenance or use of an "underinsured motor vehicle".

The UIM endorsement further states:

"Insured" as used in this endorsement means:

1. You or any "family member"
2. Any other person "occupying" "your covered auto". . .[1]

---

[1] The legal effect of the language in the State Auto policy does not appear to be in dispute. The dispute centers on the terms of the Travelers policy. Nonetheless, the Court recites the State Auto policy for completeness.

**IV. The Law**

There is no dispute that Pennsylvania law governs the interpretation of the policy. The Supreme Court of Pennsylvania summarized the law of insurance contract interpretation in *401 Fourth Street, Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166 (2005), where it stated as follows:

> [W]e begin our analysis by setting forth the well-established rules of insurance contract interpretation. "The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) (citations omitted); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). The purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Ins. Co.*, 512 Pa. 420, 517 A.2d 910, 913 (1986) (*quoting Standard Venetian Blind Co.* (citations omitted)). When the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Id*. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. *See id.* "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Madison Construction Co.*, 735 A.2d at 106 (*quoting Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192, 519 A.2d 385, 390 (1986)). Finally, "[i]n determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly." *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659, 662 (1982) (*quoting Moore v. Stevens Coal Co.*, 315 Pa. 564, 173 A. 661, 662 (1934)). Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

879 A.2d at 171. *See also J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363-65 (3d Cir. 2004) (summarizing Pennsylvania law on the interpretation of insurance contracts).

The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Tp. v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). In *Bensalem Tp. v. Int'l. Surplus Lines Ins. Co.*, 38 F.3d at 1309, the United States Court of Appeals for the Third Circuit instructed courts applying Pennsylvania law to "examine the totality of the insurance transaction involved to ascertain the reasonable expectation of the insured." The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *State Highway & Bridge Auth. v. E.J. Albrecht Co.*, 59 Pa.Cmwlth. 246, 430 A.2d 328 (1981). A determination of whether a contract is ambiguous also is a question of law for the court. *Hutchison*, *supra*.

Where, as here, there is a dispute between two insurers regarding coverage under their respective insurance policies, the Court will consider each policy from the prospective of the insured and will construe each policy most strongly against the insurer. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 657 A.2d 1252 (1995), *appeal granted* 674 A.2d 1075, and *reversed on other grounds*, 701 A.2d 1330 (1997).

**V.     Application**

The clear and unambiguous language of the Travelers policy cited above (as well as the State Auto policy) establishes that the UIM coverage does not cover the **vehicle** in question. Rather, it covers the **insured** while occupying an unowned "auto". In other words, the rental vehicle did not qualify as a covered auto because only owned autos qualified as covered autos. Biblis (and Johnson) qualified as insureds for UIM coverage based upon the modification of who

is an insured contained in the Drive Other Car Coverage Endorsement to the Travelers Policy.

Therefore, because neither policy provides UIM coverage on the vehicle in question, the the Pennsylvania Underinsured Motorists Coverage - Nonstacked Endorsement in the Travelers policy explains the order of priority and other relevant details. The "Other Insurance" provision, which bears repeating, states:

> a. If there is other applicable similar insurance available under more than one Coverage Form or policy, **the following priorities of recovery apply**:
>
> First  The Underinsured Motorists Coverage applicable to the Vehicle the "insured" was "occupying" at the time of the "accident."
>
> **Second  The Coverage Form or Policy affording Underinsured Motorist Coverage to the "insured" as a named insured or family member.**

Accordingly, because neither the Travelers nor the State Auto policy provides UIM coverage on the "Vehicle", but rather, both unambiguously provide coverage to the "insured," both policies are in the second order of priority of recoveries. The "Other Insurance" provision, therefore, go on to state:

> b. Where there is no applicable insurance available under the first priority, the maximum recovery under all Coverage Forms or policies in the second priority shall not exceed the highest applicable limit for any one vehicle under any one Coverage Form or policy.
> * * *
> d. If two or more Coverage Forms or policies have equal priority:
>
> (1) The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority;
>
> (2) The insurer thereafter is entitled to recover pro rata contribution from any other insurer for the benefits

>     paid and the costs of processing the claim; and
>
> (3) If we are the insurer against whom the claim is first made, we will pay, subject to the limit of insurance for Underinsured Motorists Coverage shown in the Declarations, after all contributing insurers agree as to:
>
>  (a) Whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle;" and
>
>  (b) The amount of damages.

Exhibit 1, at pp. 2-3 of 4 (emphasis added).

Here, Travelers processed and paid the claim of Biblis (and Johnson). According to the above policy language, which this Court finds to be clear and unambiguous, Travelers is now entitled to seek a pro rata contribution from State Auto for the benefits paid and the costs of processing the claim.

Although the Travelers policy does not define pro rata contribution (which tracks the language of 75 Pa. C.S. § 1738), Black's Law Dictionary defines "pro rata clause" as follows:

> Such clause commonly used as other insurance provision in automobile liability policy provides that when an insured has other insurance available, company will be liable only for proportion of loss represented by ratio between its policy limits and total limits of all **available** insurance.

Black's Law Dictionary, 6th Edition at p. 1220 (citation omitted).

Therefore, the pro rata contribution refers to the proportionate share based on the policy limits which were **available** to Biblis under the circumstances here. Because the entire policy limits on the Travelers policy were not available to Biblis because Johnson also had a claim, the amount of insurance **available** to Biblis under the Travelers policy was some amount less than $1,000,000 (the policy limits). Because State Auto failed to participate in the settlement process

(State Auto did however later provide $40,000 payment to Biblis), Travelers was left with the sole decision regarding the value of claims of the insureds. Therefore, based upon Travelers payment of $465,000 to Biblis to settle her claim (with the remaining $535,000 of the policy limits going to Johnson), the amount of insurance **available** to Biblis under the Travelers policy was $465,000.

Although State Auto now claims that the policy limits of its policy was $250,000 based upon the Declarations page of the State Auto Policy, the fact remains that there was no valid waiver of stacking executed. Therefore, the **available** policy limit was $500,000 on the State Auto Policy for Biblis (since Johnson was not an insured under the State Auto Policy).

Travelers is therefore entitled to contribution from State Auto and the limits for purposes of calculating the pro rata contribution is $465,000 (the available policy limit) for Travelers' policy and $500,000 (the available policy limit) for the State Auto policy. The proper allocation is 0.4819 (which is $465,000 divided by $965,000) for Travelers and 0.5181 ($500,000 divided by $965,000) for State Auto. Therefore, State Auto is liable to Travelers in the amount of $220,192.50, plus Travelers' costs of processing the claim.

Viewed in light of the foregoing principles of insurance contract interpretation, the Court finds that both policies are of second priority, and therefore, because they have equal priority, according to the clear and unambiguous policy language of the Travelers policy, Travelers is owed a pro rata contribution plus costs. The amount of the contribution owed by State Auto is $220,192.50 plus $668.12 in costs.

### VI. Conclusion

For the reasons set forth hereinabove, the Court finds that the order of priority is equal

(second priority) as a matter of law, and therefore, State Auto owes a pro rata contribution to Travelers in the amount of $220,192.50 plus $668.12 in costs.   The motion for summary judgment by plaintiff, Travelers (doc. no. 24), will be GRANTED.  The motion for summary judgment by defendant, State Auto (doc. no. 20), will be DENIED.

    An appropriate order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:    All counsel of record